UNITED STATES DISTRICT COURT                                    C/M
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                    :
DENNYS ACEVEDO,                                     :
                                                    :        **MEMORANDUM**
                            Petitioner,             :        **DECISION AND ORDER**
                                                    :
            - against -                             :        13 Civ. 5579   (BMC)
                                                    :
MICHAEL CAPRA, Superintendent at                   :
Sing Sing Correctional Facility,                    :
                                                    :
                            Respondent.             :
                                                    :
----------------------------------------------------------- X

**COGAN,** District Judge.

Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging his

conviction for first degree manslaughter.  As to those claims raised on direct appeal, I hold that

the rejection of one of the claims was not inconsistent with nor did it unreasonably apply

Supreme Court precedent.  As to petitioner's second claim, I hold that it is deemed exhausted

and procedurally barred because petitioner did not raise it as a federal claim on direct appeal.

Most of petitioner's other claims are procedurally barred, but he has exhausted ineffective

assistance of counsel claims as to those barred contentions, so the petition largely turns on the

review of his ineffective assistance claims as constituting cause to excuse the procedural bar.

The ineffective assistance of counsel claim presents a procedural posture often seen but

rarely analyzed, raising issues about both the proper application of the New York Criminal

Procedure Law in state court and how that law intersects with the standard of federal habeas

corpus review.  Under New York law, ineffective assistance of counsel claims that are based on

errors or omissions that appear on the record of a defendant's direct appeal must be raised on that

direct appeal or they are deemed forfeited.  Conversely, counsel errors based on matters that do

not appear on the record cannot be raised on direct appeal and must be raised in collateral proceedings. But what happens if a defendant's ineffective assistance claim alleges both on the record and off the record error? Which state court considers the possibility that while each individual counsel error may not have prejudiced a defendant, the sum total of error, both on the record and off, does?

Recent decisions from the Appellate Division, Second Department, which rendered the decision under review here, hold that a collateral proceeding is the proper place to raise these "mixed" claims of ineffective assistance. Nevertheless, it appears that these holdings have not taken root with either the District Attorneys' offices within the Second Department, nor with some of the trial courts in that jurisdiction. As occurred in this case, District Attorneys continue to assert in collateral state court proceedings that any claims of counsel error that could have been raised on direct appeal are procedurally barred, and the court in the collateral proceeding can only hear claims of counsel error based on matters that are off the record. The state courts, as occurred in this case, often oblige, and to make matters more complicated, often do not expressly distinguish which claims they believe to be off the record, and thus are being considered on the merits, and which claims they believe are procedurally barred by the failure to raise them on direct appeal.

After some initial resistance, respondent in the instant case has conceded at the Court's urging that when this occurs, this Court cannot apply the deferential standard of review normally applied in federal habeas corpus proceedings under the Antiterrorism and Effective Death Penalty Act of 1996. No state court has evaluated the ineffective assistance claim in its totality, and petitioner cannot be faulted because he fully utilized the available state procedures to

exhaust the claim in the only manner provided by state law. Under these circumstances, the ineffective assistance claim must be considered de novo.

Having undertaken this analysis, I conclude that none of the counsel errors alleged by petitioner can be classified as objectively unreasonable decisions by counsel, nor can I conclude that petitioner was prejudiced. I therefore deny the ineffective assistance claim along with the other claims and dismiss the petition.

## BACKGROUND

Petitioner's conviction arose out the stabbing death of one Jose Santiago. Santiago and his friend Richard Gonzalez encountered a group of men and women in a diner that included petitioner and his friend Jose Placencia. The encounter occurred after 4:00 a.m., after all of the participants had spent the night at a nightclub. Words were exchanged in the diner and the exchange escalated into a street fight a short distance from the diner, in which Santiago was stabbed and ultimately died. A medical examiner testified that Santiago died from being stabbed multiple times with such force that his ribs were broken and his heart was pierced.

Following the incident, petitioner fled, making a stop at his girlfriend's sister's house in Pennsylvania, then going on to the Dominican Republic, where he was found and extradited seven years later. As discussed below, the time lapse has significance, since by the time petitioner was extradited, neither of the two identifying witnesses could identify petitioner in court, even though they had independently picked out his photograph immediately following the incident.

 The morning of Santiago's death, the investigating detective, Martin, interviewed González, who gave a description of the two men who had fought with Santiago as Hispanic and

Dominican. Detective Martin had worked in the precinct for a decade, knew that it was a Dominican neighborhood, and knew that a street gang called Los Papi Chulos was active there.

The next day, Detective Martin and another detective interviewed a disinterested witness, Raul Rios, who had witnessed the fight and attempted to give aid to Santiago after the stabbing. Rios did not know Santiago or Gonzalez, but knew by sight the two men who had fought with Santiago. He described the two men as Dominican, one dark-skinned with a light mustache, and the other light-skinned with bleached blonde hair. Martin, who had no suspects at that point, showed Rios 27 photographs of people who Martin thought were affiliated with Los Papi Chulos. Rios picked petitioner's photograph out of the group, and Martin issued a warrant for petitioner's arrest.

Martin then created a photo array that included petitioner's picture and five others. He testified that he included photographs that had similar physical characteristics to petitioner as to likeness, skin color, and ethnicity. A computer then randomly arranged the comparables that Martin had selected in the array. Martin showed the array to Gonzalez that same day. Gonzalez identified petitioner and signed petitioner's photograph to so indicate. Rios identified petitioner out of another copy of the same photo array, also signing his name, and identified Placencia as the second assailant out of a different photo array.

The facts were disputed at trial as to who the aggressor in the fight was and who had stabbed Santiago. Gonzalez testified that he saw the fight but could not see who had stabbed Santiago. However, he further testified that after petitioner and Placencia ran away when Santiago was stabbed, petitioner returned, holding a knife, and Gonzalez told him they didn't want any more trouble. Gonzalez testified that he did not see where petitioner went after that.

Prior to petitioner's trial, Placencia pled guilty to first degree manslaughter, stating in his allocution that he and petitioner had intended to cause Santiago serious physical injury and had caused his death. At trial, however, he testified on behalf of petitioner more specifically than his allocution and said that he (Placencia) had stabbed Santiago but that was because Santiago had "walk[ed] into the knife," which Placencia testified was only two inches long and which Placencia had drawn only to scare Santiago. Thus, Placencia's story was that Santiago had effectively impaled himself on the knife. Placencia further testified that petitioner had only punched Santiago when Santiago came at them. Petitioner testified in his own behalf as well, consistently with Placencia, although saying that he did not know how Santiago had been stabbed and had not seen it.

Petitioner and Placencia were both charged with two counts of second degree murder and one count of fourth degree criminal possession of a weapon. As noted above, Placencia pled guilty prior to petitioner's trial to first degree manslaughter and was sentenced to ten years' imprisonment. At petitioner's trial, the trial court submitted, without objection, the additional charge of first degree manslaughter as a lesser included offense. The jury convicted petitioner on the manslaughter charge and acquitted him of the murder charge. The court sentenced petitioner to twenty years as a second violent felony offender. The Appellate Division affirmed his conviction and the New York Court of Appeals denied leave to appeal. People v. Acevedo, 84 A.D.3d 1390, 925 N.Y.S.2d 523 (2d Dep't 2011), leave to appeal den., 17 N.Y.3d 951, 936 N.Y.S.2d 77 (2011).

Petitioner then commenced simultaneously two collateral challenges to his conviction: (1) a proceeding in the trial court under N.Y. C.P.L. §440.10, challenging the effectiveness of his trial counsel on numerous grounds; and (2) a *coram nobis* proceeding in the Appellate Division,

challenging the effectiveness of his appellate counsel for failing to raise the effectiveness of his trial counsel, for those same reasons, on direct appeal.  As to the latter, the Appellate Division summarily held that "[petitioner] has failed to establish that he was denied the effective assistance of appellate counsel."  People v. Acevedo, 104 A.D.3d 862, 960 N.Y.S.2d 656 (2d Dep't 2013), leave to appeal den., 21 N.Y.3d 1001, 971 N.Y.S.2d 253 (2013).

About three weeks later, the §440 court denied petitioner's §440 motion.  It set forth three grounds for its ruling, in the following order.  First, the §440 court held that: "[T]o the extent that the conduct complained of appears in the trial record, the court is barred from considering them."  It did not specify which grounds appeared in the trial record and which did not.  Second, it held that: "In the instant matter, the conviction was affirmed and there was also a finding that appellate counsel was effective, leading this court to the inevitable conclusion that the present motion must be denied."  Third, it held that:

> Under Federal Standards the defendant is also require to demonstrate prejudice, manifested by the reasonable probability that the verdict would have been different but for [trial] counsel's alleged ineffectiveness.  Strickland v. Washington, 466 U.S. 668.  No credible evidence has been presented to this court that would substantiate such a finding.

The Appellate Division denied leave to appeal this Order.

Additional facts will be set forth below as they relate to each of petitioner's points of error.

**DISCUSSION**

## I. Claims rejected on the merits on direct appeal

Petitioner had two claims rejected solely on the merits on direct appeal.

### A. *Insufficiency of the evidence*

The Appellate Division held that "viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish that the defendant intended to cause serious physical injury to the victim and caused the victim's death." Acevedo, 84 A.D.3d at 1391, 925 N.Y.S.2d at 525 (citation omitted).

Since the Appellate Division rejected this claim on the merits, my review of that decision attracts the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). That statute provides for habeas corpus relief only if the state court's adjudication of the claim was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (internal quotation marks omitted). Moreover, a state court decision involves "an unreasonable application" of clearly established Federal law if the state court applies federal law to the facts of the case "in an

objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1439 (2005).

The Supreme Court has clarified that the AEDPA standard of review is extremely narrow, and is intended only as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal[.]" Ryan v. Gonzales, — U.S. —, 133 S. Ct. 696, 708 (2013) (quoting Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786). State court decisions must "be given the benefit of the doubt," Felkner v. Jackson, — U.S. —, 131 S. Ct. 1305, 1307 (2011) (quoting Renico v. Lett, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010)), and "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." Harrington, 131 S. Ct. at 786. Indeed, in Harrington, the Supreme Court went so far as to hold that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Id. This standard of "no possibility" of disagreement among "fairminded jurists" as to the existence of legal error is arguably the narrowest standard of judicial review in the law. Moreover, the Supreme Court has expressed a lack of patience with lower courts that view its pronouncements as permitting a substantial measure of flexibility in applying this standard. See Parker v. Matthews, — U.S. —, 132 S. Ct. 2148 (2012).[1]

---

[1] Harrington and Cavazos v. Smith, — U.S. —, 132 S. Ct. 2 (2011), may have abrogated the oft-quoted language in Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000), that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" The Harrington/Cavazos standard may not quite require "judicial incompetence," id., but by precluding relief except where the error is "beyond any possibility for fairminded disagreement," Harrington, 131 S. Ct. at 787, it certainly comes close. The Second Circuit has noted that these Supreme Court decisions have narrowed the standard of habeas review that the Circuit previously applied. See Rivera v. Cuomo, 664 F.3d 20, 21-22 (2d Cir. 2011) (reversing its earlier decision granting habeas relief upon consideration of Cavazos).

As is often the case in habeas corpus review, petitioner's burden is doubly difficult. He not only faces the narrow standard of review described above, but the issue he has raised – insufficiency of the evidence – itself is already subject to a narrow standard of review. In reviewing the sufficiency of the evidence to support a conviction, the inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979) (emphasis in original). Thus, even when "faced with a record of historical facts that supports conflicting inferences[,] [the habeas court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994). Relief on a sufficiency claim cannot be granted unless the record is "so totally devoid of evidentiary support that a due process issue is raised." Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994).

In sum, to obtain relief on an insufficiency claim, Harrington and Jackson, read together, require a finding that both the jury's verdict and the state court's review of the jury's verdict represent conclusions by each that at least border on the irrational. Petitioner does not come close to making that difficult showing here.

The trial of this case was purely a swearing contest. Gonzalez testified that he saw petitioner holding a knife shortly after the fight a couple of inches away from Santiago. He also testified that petitioner and Placencia ran towards him and Santiago after the heated exchange in the diner. Rios confirmed that petitioner and Placencia had fought with Santiago. It was undisputed that Santiago was unarmed. The medical examiner testified that Santiago had died of multiple stab wounds to the heart which caused broken ribs. The identification testimony

showed that Gonzalez and Rios had picked petitioner picked out of photographs, and in any event, petitioner and Placencia, in their testimony, admitted being involved in the altercation. Moreover, petitioner's story was undercut by his and Placencia's prior convictions; petitioner's flight to the Dominican Republic after the fight; and Placencia's somewhat absurd testimony that Santiago had suffered multiple, deep stab wounds and broken bones by repeatedly impaling himself on Placencia's supposedly two-inch knife.

All the prosecution needed to do was to introduce sufficient evidence so that the jury could find beyond a reasonable doubt that petitioner intended to cause serious physical injury to Santiago, or that he acted in concert with Placencia, who had such intent, to do so. The Appellate Division's holding that there was sufficient evidence to sustain the jury verdict was neither contrary to, nor an unreasonable application of, Supreme Court authority.

B.   *Improper questioning as to gang membership*[2]

During the cross-examination of Placencia, the prosecutor elicited that Placencia was "around" Los Papi Chulos but he denied being a member of the gang. In addition, the prosecutor asked both petitioner and Placencia on cross-examination to explain a hand gesture (referred to as a "symbol" in the questioning) depicted in certain photographs of them, which, on direct appeal, petitioner contended was an implied reference to gang membership. In this questioning about the hand gesture, neither the prosecutor, Placencia, nor petitioner ever made any express reference to gang membership; both Placencia and petitioner described the hand gesture as just a

---

[2] In alluding to this claim in petitioner's collateral challenges to the conviction, but not on direct appeal, the parties referred to this claim as the alleged violation of the trial court's pretrial Sandoval ruling, in which the trial court had ruled that the prosecutor could inquire into petitioner's felony conviction, but could not ask him about gang membership. This is somewhat of a misnomer. The Sandoval ruling did not say anything about cross-examining Placencia about gang membership or anything else. This is as expected, since a Sandoval hearing addresses what convictions and wrongful acts of a defendant can be used at trial in cross-examining him. See Grayton v. Ercole, 691 F.3d 165, 173 (2d Cir. 2012).

greeting that had no significance. In addition, the prosecutor asked petitioner whether he had seen any members of Los Papi Chulos while staying in Pennsylvania with his sister, to which petitioner replied, "No. I don't know them."

On direct appeal, petitioner contended that this line of questioning was "palpably and unduly prejudicial." The Appellate Division held that: "While the prosecutor's questions pertaining to gang involvement were improper since there was no connection between gang membership and the alleged crime, they did not deprive the defendant of a fair trial." Acevedo, 84 A.D.3d at 1391, 925 A.D.3d at 526 (citations omitted).

This point is not reviewable on federal habeas corpus because petitioner presented it to the state courts only as a question of state law. To the extent he is now attempting to assert it as a federal constitutional claim, it is unexhausted.

Before raising this claim in support of a petition for a writ of habeas corpus, a petitioner must exhaust any available state remedies. 28 U.S.C. § 2254(b)(1)(A). To properly exhaust a state court remedy, a petitioner "must apprise the highest state court of both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005); see also St. Helen v. Senkowski, 374 F.3d 181, 182-83 (2d Cir. 2004) ("To satisfy the exhaustion requirement of 28 U.S.C. § 2254(b), a petitioner must alert the state court to the constitutional nature of a claim but need not refer[ ][to] chapter and verse [of] the U.S. Constitution.") (alterations in original, internal quotation marks and citation omitted); Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) ("Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims.") (citations omitted).

In Daye v. Attorney General, 696 F.2d 186, 194 (2d Cir. 1982) (en banc), the Second Circuit listed four methods by which a defendant may be considered to have fairly presented a federal constitutional claim to the state courts:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Neither in his Appellate Division brief nor in his application for leave to appeal to the New York Court of Appeals did petitioner ever cite a federal case, refer to the United States Constitution, or even use the words "due process." Indeed, although the Appellate rejected the claim on the basis that the prosecutor's questions did not deprive petitioner of a "fair trial," petitioner's briefs did not even use that term, contending only that the questioning was "unduly prejudicial." In any event, the Second Circuit has squarely held that even when a petitioner uses the words "fair trial," that does not mean that a petitioner has presented the state courts with a federal claim:

> Appellant suggests that references in his state court brief to denial of a "fair trial" sufficiently alerted the Appellate Division to a contention that the trial failed to comport with the due process guaranties of the Fourteenth Amendment. . . . [But] the exhaustion requirement is not automatically satisfied every time an alleged trial error is claimed to deny a defendant a "fair trial." State court briefs routinely characterize a variety of errors as a denial of a fair trial, conveying the thought that the error, simply as a matter of state law, warrants a new trial. Alleging lack of a fair trial does not convert every complaint about evidence or a prosecutor's summation into a federal due process claim.

Kirksey v. Jones, 673 F.2d 58, 60 (2d Cir. 1982).

The state law cases cited by both petitioner and the Appellate Division in the state courts support the view that this issue was presented as a question of New York law. None of them referred to the United States Constitution or the due process clause or to any federal cases. Rather, the New York cases upon which petitioner relied appear to relate to a New York

evidentiary rule that prohibits a prosecutor from inquiring into gang membership unless there is evidence connecting the gang membership to the charged crime. See People v. Livingston, 128 A.D.2d 645, 645, 512 N.Y.S.2d 889, 890 (2d Dep't 1987). The Appellate Division, rejecting petitioner's argument, similarly referred to a line of New York cases that qualify the application of this rule when its disregard does not have a material impact on the likelihood of the defendant's conviction. See People v. Turner, 46 A.D.3d 847, 848, 848 N.Y.S.2d 275, 276 (2d Dep't 2007); People v. Sellan, 143 A.D.2d 690, 691, 533 N.Y.S.2d 109, 110 (2d Dep't 1988). There is thus nothing in the state court record to indicate that the state courts should have been, or were, alerted to the presence of a federal constitutional claim on this issue.

If petitioner was simply reasserting his state law claim in the instant petition, I would deny it on the ground that state law claims are not cognizable on habeas corpus review. See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991). However, he has used different language in asserting the claim here than he used in state court – it is included as one of the points of error under a point heading labeled, "The Petitioner is being held in violation of his United States Constitutional Right to a fair trial." This is sufficient to allege a federal constitutional claim. But, as noted above, it is an unexhausted federal constitutional claim.

The failure to exhaust this claim does not mean that petitioner should be permitted to return to state court, as that would be a futile gesture – plaintiff's opportunity to raise this claim with the state courts has passed. Any federal constitutional challenge to the prosecutor's questioning would have to have been raised on direct appeal, and cannot be raised in state court now. See Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001) ("Petitioner was entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals . . . ."). When a claim is in that posture, it is deemed exhausted but procedurally barred

and cannot be heard on federal habeas corpus review.  See Reyes v. Keane, 118 F.3d 136, 139

(2d Cir. 1997) (quoting Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed,

489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 1043 n.9 (1989))).  See also St. Helen, 374 F.3d at 183

("[E]ven if a federal claim has not been presented to the highest state court or preserved in lower

state courts under state law, it will be deemed exhausted if it has become procedurally barred

under state law."); DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (petitioner's

procedurally defaulted claims deemed exhausted where he could no longer obtain state court

review because of his procedural default); McKethan v. Mantello, 292 F.3d 119, 122-23 (2d Cir.

2002) (claims deemed exhausted where they were "procedurally barred for not having been

raised in a timely fashion"); Bossett, 41 F.3d at 828 ("[I]f the petitioner no longer has 'remedies

available' in the state courts under 28 U.S.C. § 2254(b), we deem the claims exhausted.")

(quoting Grey, 933 F.2d at 120-21); Castille v. Peoples, 489 U.S. 346, 350, 109 S. Ct. 1056,

1059 (1989) ("It would be inconsistent with [§ 2254(b) ], as well as with underlying principles of

comity, to mandate recourse to state collateral review whose results have effectively been

predetermined . . . .").  The claim is therefore rejected.

## II. Claims held unpreserved on direct appeal

A. *Unduly suggestive identification procedure*

1. Background

All of the facts concerning Gonzalez and Rios' photographic identification of petitioner,

described above, came out in Detective Martin's testimony either at the pretrial Wade hearing or

trial.  In addition, the record showed that six months after Gonzalez had picked petitioner out of

the photo array (although petitioner was still in the Dominican Republic), the case was presented

to a grand jury, at which Rios again picked petitioner out of the same six person photo array out of which Gonzalez had picked him.

However, the suppression court at the Wade hearing was not expressly asked to, and did not, consider whether the photo array or the group of photographs shown to Rios was unduly suggestive. Rather, whatever it was that caused the Wade hearing to be held – the record does not contain any written motion by petitioner's counsel – the Wade hearing instead consisted of what was in effect a motion *in limine* by the prosecutor to determine if the photo of petitioner from the Los Papi Chulos photos and the photo array, and Martin's testimony about Gonzalez and Rios picking petitioner out of those photographs (collectively, the "photographic evidence"), could be introduced at trial. The problem for the prosecutor was that after petitioner's seven years in absentia, neither Gonzalez nor Rios could identify petitioner in person or recall which photograph they had selected; indeed, Rios could not even recall whether he had picked petitioner out of the 27 Los Papi Chulos photographs. The prosecutor needed to use Martin's testimony as to Gonzalez' and Rios' response to the Los Papi Chulos photographs and the photo array to make the identification.

There is a statute in the New York Criminal Procedure Law, N.Y. Crim. Proc. Law § 60.25, which addresses this situation. That statute provides that a witness may testify at trial that another person identified a defendant on an earlier occasion if certain foundational requirements, like lack of present recollection, are met. The Wade hearing consisted of the issue of whether Martin would be allowed to testify at trial as to Gonzalez' and Rios' identification of petitioner from the photographs, and the suppression court held that if the prosecutor presented foundation testimony consistent with her proffer at the Wade hearing, such testimony could be admitted. Petitioner's trial attorney agreed to that procedure.

At trial, Gonzalez and Rios testified, first out of the hearing of the jury and then before it, that they could not recall whether petitioner was the person they picked out from the photos, but each testified that their signatures appeared on petitioner's photograph. Based on that foundation, the trial court permitted Martin to testify that they had picked out petitioner, and Gonzalez and Rios had signed petitioner's photograph out of the array when he had shown it to them. Petitioner's counsel did not object to this testimony.

Nevertheless, on direct appeal, petitioner contended for the first time that the trial court should have suppressed the pretrial identification of petitioner by the witnesses to the fight because it was unduly suggestive. He argued that Rios' identification from the photo array was tainted because Rios had previously picked petitioner out of the 27 Los Papi Chulos photographs. He further argued that Gonzalez had not given enough of a description to permit Martin to compile the photo array.

The Appellate Division held that this claim was "unpreserved for appellate review, since he failed, at a Wade hearing . . . , to raise the specific grounds upon which he now challenges the procedure . . . ." Acevedo, 84 A.D.3d at 1390, 925 N.Y.S.2d at 524 (citations omitted). The Appellate Division alternatively held that "[i]n any event," petitioner's claim was "not supported by the record." Id. The Appellate Division, as to this alternative ruling, expressly held that petitioner's claim of dissimilarity between his and the "fillers'" photographs was contrary to the record. It also expressly held that the procedure was not unduly suggestive. Id.

## 2. Procedural Bar

A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is *independent* of the federal question raised and *adequate* to support the judgment." Lee v. Kemna, 534 U.S. 362, 375, 122 S. Ct. 877, 885

(2002) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991)) (emphasis in original).  When a state court rejects a petitioner's claim because he "failed to meet a state procedural requirement[,]" the procedural bar may constitute an adequate and independent ground for the state court's decision.  <u>Coleman</u>, 501 U.S. at 729-30, 111 S. Ct. at 2554.  <u>See also</u> <u>Murden v. Artuz</u>, 497 F.3d 178, 191-92 (2d Cir. 2007).  State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state.  <u>Lee</u>, 534 U.S. at 376 (quoting <u>James v. Kentucky</u>, 466 U.S. 341, 348, 104 S. Ct. 1830, 1835 (1984)).

It is well-settled that New York's contemporaneous objection rule, codified at N.Y. Crim. Proc. Law § 470.05, is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review.  <u>See, e.g.</u>, <u>Downs v. Lape</u>, 657 F.3d 97, 104 (2d Cir. 2011).  That statute requires a party to seek pretrial suppression of any evidence which he knows the prosecution intends to introduce.  <u>See</u> <u>People v. Vann</u>, 92 A.D.3d 702, 938 N.Y.S.2d 182 (2d Dep't 2012).  In addition, if a defendant presents arguments to suppress some evidence but not additional arguments to suppress other evidence, he has failed to preserve any objection to suppress the evidence against which he has not moved.  <u>Id.</u>; <u>People v. Inge</u>, 90 A.D.3d 675, 933 N.Y.S.2d 879 (2d Dep't 2011).  Here, there can be no question that petitioner's trial counsel did not object to the photographic evidence and testimony as unduly suggestive, and thus the state court properly held the claim to be unpreserved.

The issue then becomes whether any ground exists for reaching the merits notwithstanding that procedural bar.  Procedural default on state law grounds may be overcome by a petitioner who either demonstrates "'cause' for the default and 'prejudice attributable thereto,' or . . . that failure to consider the federal claim will result in a 'fundamental miscarriage

of justice.'" <u>Harris</u>, 489 U.S. at 262, 109 S. Ct. at 1043 (citations omitted). Although, in some circumstances, ineffective assistance of counsel can constitute "cause" sufficient to avoid a procedural default, <u>see</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 488-89, 106 S. Ct. 2639, 2645-46 (1989), the ineffective assistance claim must itself have been exhausted in the state court. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 447, 120 S. Ct. 1587, 1589 (2000).

      3.  <u>Ineffective Assistance of Counsel</u>

Under New York practice, as applicable in this case, the proper procedure to assert ineffective assistance of counsel for failure to challenge the use of the photographic evidence at trial was on direct appeal when the challenge to the photographs was raised. This was because the failure to object was apparent from the hearing and trial court record, and New York courts require ineffective assistance claims that are apparent from the record to be raised on direct appeal, or else they are waived. <u>See</u> N.Y. Crim. Proc. Law § 440.10(2)(c); <u>Aparicio</u>, 269 F.3d at 93 ("New York law prohibits review of a claim on collateral review when the defendant unjustifiably fails to raise the claim on direct appeal"); <u>Reyes</u>, 118 F.3d at 139. The Second Circuit has regularly held that a court's denial of a § 440.10 motion on the basis of the movant's failure to raise an issue on direct appeal is an independent and adequate state ground barring federal habeas review. <u>See, e.g.</u>, <u>Sweet v. Bennett</u>, 353 F.3d 135, 139-40 (2d Cir. 2003).

These facts give rise to a scenario that sometimes occurs in habeas corpus review of a double procedural default. The scenario can be explained as follows. First, a state court holds on direct appeal that a petitioner has forfeited a substantive constitutional claim apparent on the record, <u>e.g.</u>, an evidentiary error sufficiently serious to deprive him of due process, by not preserving it at trial. A federal habeas review court would recognize this procedural bar unless there is "cause" and "prejudice" to excuse it, which might include ineffective assistance of trial

counsel.  As noted above, to consider the ineffective assistance claim, federal habeas corpus law requires exhaustion of that claim in state court.  However, if petitioner only raised ineffective assistance of counsel on this point in a collateral challenge, then the state court will hold that claim procedurally barred as well, since it should have been raised on direct appeal.

The question raised by this scenario is whether petitioner, having asserted his ineffective assistance claim in a manner not procedurally permitted by state law – the §440 proceeding – where it was doomed to fail, and having forfeited his opportunity to raise it properly (since he has already taken his one direct appeal), has, in fact, properly exhausted his ineffective assistance claim.  In other words, is the exhaustion requirement separate from the proper procedural context under state law in which the claim must be raised?  If the answer to this question is in the affirmative, then it leaves the standard of federal habeas corpus review unclear.  When the federal court goes to assess the merits of the ineffective assistance claim as "cause" for procedurally defaulting on the substantive claim, it will not find a merits determination to which it can give AEDPA deference because the state court has relied on the procedural bar.  Alternatively, if the state court expresses an alternative holding on the merits (as the §440 court did in this case), the federal habeas court's review of that alternative merits holding, without determining that the procedural bar invoked by the state court was exorbitant, would seem to run afoul of the Supreme Court's pronouncement that state courts should not fear federal habeas corpus review of merits determinations that are wholly alternative to state procedural bars, since the federal courts must recognize valid state procedural bars.  See Harris, 489 U.S. at 264 n. 10 ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding.") (emphasis in original).  Where a state court rules that a claim is "not preserved for appellate review," and then, prefaced by the phrase "in any event," goes on to reject the claim's merits in

the alternative, such a claim is still procedurally barred.  Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996).

The case law holds, however, that exhaustion has a procedural component – if petitioner fails to use the proper state court procedure for raising his ineffective assistance claim and the state court therefore procedurally defaults the claim, then the claim is unexhausted.  See Dean v. Smith, 753 F.2d 239 (2d Cir. 1985)[3]; see also Ex parte Hawk, 321 U.S. 114, 64 S. Ct. 448 (1944) (per curiam); Ellison v. Brown, 16 F.3d 1219, at *2 (6th Cir. 1994); Ramos v. Racette, No. 11 Civ. 1412, 2012 WL 12924, at *16 (E.D.N.Y. Jan. 4, 2012); Gil v. Kelly, No. 90 Civ. 0603, 1992 WL 151901, at *3 (E.D.N.Y. June 16, 1992).  Most courts hold that if there is no longer an avenue under state procedural law in which petitioner may properly present the claim, then the claim will be deemed exhausted and procedurally barred.  See Grey, 933 F.2d at 120.  Other courts simply skip over the exhaustion requirement and find the claim procedurally barred.  See Avent v. Napoli, No. 08 Civ. 932, 2013 WL 1788626, at *10-12.

In the instant case, petitioner's attempt to raise his ineffective assistance of trial counsel claim as to the photographic identification issue in a §440 proceeding was virtually certain to fail because, as shown above, state law required that claim to be raised on direct appeal.  Because the manner in which he raised it was procedurally defective, and because there was not and is not any way to raise that claim in state court, it is deemed exhausted and procedurally barred.  The §440 court's alternative holding that petitioner had not demonstrated ineffective assistance of

---

[3] Although Dean stands for the still valid, pre-AEDPA rule that utilization of an improper procedure does not result in exhaustion of a claim, it is a peculiar decision.  The Second Circuit held that the petitioner had not exhausted his claim because he had sought to raise it in a state habeas corpus proceeding, which was not the proper method under state law, as the state court had held.  The Second Circuit dismissed the claim as unexhausted so that the petitioner could exhaust it through a §440 motion and then return to federal court if it was denied.  "This post-conviction remedy in the state courts is apparently still available to Dean."  Id. at 241.  However, a §440 was not available to the petitioner.  His claim was that a jury instruction was defective.  This was a claim that had to be raised on direct appeal, not under §440, and thus the state courts would have rejected it as procedurally barred.

counsel is of no assistance to him, because this Court is constrained by the §440 court's prior, and proper, invocation of a procedural bar.  See Harris, 489 U.S. at 264 n.10.  It is no different than if petitioner had not raised the claim in his §440 proceeding at all.[4]

That does not end the inquiry, however, as to whether petitioner might have cause for not raising his photographic evidence claim.  This is because he contended, in his *coram nobis* motion, that his appellate counsel on direct appeal should have raised his trial counsel's ineffectiveness as to, among other things, the failure to object to the photographic evidence as unduly suggestive.

The situation encountered by the Second Circuit in the often-cited Aparicio case was similar.  The main difference is that the petitioner there had not raised his ineffective assistance of trial counsel claim in a §440 proceeding; he had raised one aspect of it in his *coram nobis* motion and another aspect of that claim not at all.  Nevertheless, the Second Circuit held that his *coram nobis* motion – which, like the instant case, was disposed of by one sentence saying that the petitioner had received effective assistance of appellate counsel – served as a gateway to considering the underlying claim of a due process violation at trial.  It did this, first, by requiring a determination of whether there was cause and prejudice as a result of the alleged ineffective assistance of trial counsel, and, second, by then requiring a determination of the first issue through examining the underlying due process issue itself.  There is, of course, quite a bit of compartmentalization occurring in such an analysis, but in the interest of federalism, it is important to recognize the distinction between reviewing the underlying claim and addressing

---

[4] The Court observes that this is problem most often encountered when a petitioner has retained private counsel or is appointed counsel for the direct appeal other than the Legal Aid Society, as was the case here.  In this Court's experience, Legal Aid Society lawyers, when confronted with a possibly unpreserved claim that they wish to raise on appeal, uniformly assert ineffective assistance of trial counsel in anticipation of a potentially adverse ruling on preservation, thus exhausting the claim for federal habeas corpus purposes.

whether there is cause and prejudice that would excuse a procedural default.  The procedure in Aparicio is therefore the procedure that I will follow here.

To show a Sixth Amendment violation to effective assistance of appellate counsel, petitioner must meet the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  First, he must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms."  Id. at 688, 104 S. Ct. at 2064-65.  The court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did."  Cullen v. Pinholster, ─── U.S. ───, 131 S. Ct. 1388, 1407 (2011) (citation and internal quotation marks omitted).  Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 669, 104 S Ct. at 2055-56.  "The likelihood of a different result must be substantial, not just conceivable."  Harrington, 131 S. Ct. at 792.

Although Strickland speaks to ineffective assistance of trial counsel claims, it is equally applicable to claims of ineffective assistance of appellate counsel.  Aparicio, 269 F.3d at 95; Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).  "On appeal, counsel is not required to argue every non-frivolous issue; rather, the better strategy may be to focus on a few more promising issues so as not to dilute the stronger arguments with a multitude of claims. . . . [I]nadequate performance is established only if counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  King v. Greiner, 210 F. Supp. 2d 177, 182 (E.D.N.Y. 2002) (citing Jones v. Barnes, 463 U.S. 745, 751–53, 103 S. Ct. 3308, 3312-14 (1983)).  But a petitioner may not rebut the presumption of effective assistance by simply arguing that appellate counsel's decision to raise certain issues and not others constitutes

ineffectiveness.  See Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.  Appellate counsel is not required to "press nonfrivolous points . . . if counsel, as a matter of professional judgment, decides not to present those points."  Jones, 463 U.S. at 751, 103 S.Ct. at 3312; see also Knowles v. Mirzayance, 556 U.S. 111, 127, 129 S. Ct. 1411, 1422 (2009) ("The law does not require counsel to raise every available nonfrivolous defense").  A petitioner must prove that there is a reasonable probability that the unraised claims would have succeeded.  King, 210 F. Supp. 2d at 182-83 (citing Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992)).

Moreover, since the Appellate Division declined to award *coram nobis* relief on the merits, my review of that decision is subject to AEDPA's deferential standard as described above.  Indeed, in reviewing claims of ineffective assistance of counsel, whether trial counsel, or, in this instance, appellate counsel, my review is "doubly deferential."  Knowles, 556 U.S. at 123 (citing Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4 (2003) (per curiam)); see 28 U.S.C. § 2254(d).  To prevail, petitioner must show not only that counsel's performance fell below the Strickland standard of reasonableness, but also that the state court's application of the Strickland standard was itself unreasonable and not merely incorrect.  See Harrington, 131 S.Ct. at 785.

In examining the claim of ineffective assistance of counsel, whether at trial or appellate level, it is also readily apparent petitioner cannot meet Strickland's prejudice prong.  This is because, in fact, the Appellate Division ruled in the alternative that petitioner's identification claim had no merit.  There is no basis for believing that the Appellate Division would have reached a different result if the claim had been preserved at trial.  This means that the only argument that petitioner's counsel forfeited was the ability to have this Court review the Appellate Division's decision on the merits (which would not have been an alternative holding if

the claim had been preserved) under the deferential AEDPA standard (the standard this Court would have used but for the procedural default).

This does the petitioner no good because it is very clear, even under de novo review, that there was nothing unduly suggestive about the photographic evidence. Detective Martin showed Rios twenty-seven Los Papi Chulos photographs. He said nothing that would alert Rios to any one of them; he simply asked Rios to state whether he recognized any of the people in the photographs, and if so, how, at which point Rios picked out petitioner as the perpetrator. Martin did not, and indeed, could not have possibly steered Rios to petitioner's photographic, because at that point, petitioner was not a subject of the investigation and there is nothing to suggest that Martin even knew who he was. Nor was there any visible identifying information that could have directed Rios to any of the photographs.

The photo array that Martin thereafter compiled included petitioner, selected from the 27 photographs, and five others that Martin selected on the basis of resembling petitioner in terms of likeness, skin color, and ethnicity. A computer determined their position in the array, not Martin. There's nothing wrong with any of that either. Both Rios and Gonzales picked petitioner out of the photo array. The fact that Rios picked petitioner out of the 27 photographs and again out of the six photograph array, and that Gonzalez independently picked petitioner out of the array, gave further assurance that the threshold requirement for admitting photographic identification had been met.

"A defendant's right to due process includes the right not to be the object of suggestive police identification procedures that make an identification unreliable. . . . Generally, a witness will not be allowed to make an in-court identification if the authorities' pretrial photographic identification procedures were so impermissibly suggestive as to give rise to a *very substantial*

*likelihood of irreparable misidentification*."  <u>United States v. Douglas</u>, 525 F.3d 225, 242 (2d

Cir. 2008) (internal quotation marks and citations omitted) (emphasis in original).  The

determination of whether pretrial identification procedures were unduly suggestive "is a fairly

permissive standard, and a court applying this standard to the facts of a specific case is …

entitled to significant 'leeway' when we review its decision for reasonableness." <u>Richardson v.

Superintendent of Mid–Orange Corr. Facility</u>, 621 F.3d 196, 202 (2d Cir. 2010) (citation and

internal quotation marks omitted).

Having determined that the photographic identification had sufficient integrity to present

no due process problem, the following analysis disposes of this claim: petitioner's trial counsel

was not ineffective for failing to make an objection that would not have succeeded; petitioner's

appellate counsel was not ineffective for failing to raise trial counsel's ineffectiveness because

that also would not have succeeded; there is neither cause nor prejudice for petitioner's

procedural default in failing to raise this claim on direct appeal; and, therefore, the claim is

procedurally barred from review in this Court.

B. *Failure to Instruct on Justification Defense*

On direct appeal, petitioner contended that the trial court should have instructed on the

defense of justification.  He argued that since his testimony was that Santiago was the aggressor,

petitioner "was engaged in some degree of self-defense [sic] . . . ."  He acknowledged that his

trial counsel had not requested such an instruction, and that no New York court has ever held that

a trial court has an obligation to give a justification instruction *sua sponte*, but argued that four

intermediate appellate courts from other states had reversed convictions based upon the need to

do so.  He did not argue that trial counsel was ineffective in failing to seek such a charge.

The Appellate Division held that the claim was "unpreserved for appellate review, since [petitioner] never requested such a charge," and that, "[i]n any event, contrary to defendant's contention, the Supreme Court was not required to give the charge, sua sponte, as such an instruction would have interfered with defendant's theory of the case that the People failed to demonstrate that he possessed the requisite intent, and that he was not an accessory under Penal Law §20.00." Acevedo, 84 A.D. at 1391, 925 N.Y.S.2d at 525. The claim, therefore, is in the same procedural posture as the photographic evidence claim discussed above. That is, the initial issue before this Court is whether to uphold the procedural bar in the Appellate Division's decision, a question that must be answered by determining whether appellate counsel was ineffective for failing to raise the alleged ineffectiveness of trial counsel in not preserving this claim, which could constitute cause and prejudice for the procedural default.

Under the Strickland standard as set forth above, appellate counsel was not ineffective for failing to assert ineffectiveness of trial counsel as to this claim, essentially for the reason that the Appellate Division stated in its alternative holding – it was flatly inconsistent with petitioner's defense. The theory of defense, indeed, the entire reason for calling Placencia and having him admit to the stabbing, and having petitioner testify that he did not do the stabbing, was to lay the crime on Placencia. For petitioner to have requested an instruction that the jury could find that he was justified in stabbing Santiago would have completely undercut that theory of the case.

Strickland recognizes that "strategic choices made after thorough investigation of law and fact relevant to plausible options are virtually unchallengeable" on federal habeas corpus review. Strickland, 466 U.S. at 690; see also Yarborough, 540 U.S. at 8, 124 S. Ct. at 5 (there is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect"). Here, trial counsel had the unusual situation of a witness,

Placencia, who was willing to admit to the stabbing. His decision to go with that rather than arguing that petitioner was justified in doing the stabbing cannot be second-guessed on either direct appeal or habeas corpus review. There was thus no ineffective assistance of appellate counsel in failing to raise ineffective assistance of trial counsel, no ineffective assistance of trial counsel for choosing what could reasonably be thought of as petitioner's best case, and no cause or prejudice that would excuse petitioner's procedural default.

### III. Remaining Ineffective Assistance Claims

In his §440 and *coram nobis* motions, petitioner raised a number of other claims of ineffective assistance of trial counsel, and, because of appellate counsel's failure to raise these on direct appeal, ineffective assistance of appellate counsel. Some of these claims are based on alleged errors or omission that appear on the record, and therefore could, and indeed, had to be raised on direct appeal, but were neither preserved at trial nor raised on direct appeal. Some of them are purely off the record claims that could only be raised in a §440 motion.

This is the kind of claim that the Second Department has referred to under New York law as a "mixed claim" of ineffective assistance of counsel. See People v. Freeman, 93 A.D.3d 805, 806, 940 N.Y.S.2d 314, 315 (2nd Dep't 2012); People v. Maxwell, 89 A.D.3d 1108, 1109, 933 N.Y.S.2d 386, 388 (2nd Dep't 2011). It has recently clarified state procedural law so that it is now understood that such a claim is properly raised in a §440 motion even though part of it – the part that arises from matters apparent on the record – would, if standing alone, have to be raised on direct appeal and could not be raised in a §440 motion. See Freeman, 93 A.D.3d at 806, 940 N.Y.S.2d at 315 (defendant's "mixed claim" of ineffective assistance of counsel "cannot be resolved without reference to matter outside the record, a CPL 440.10 proceeding is the appropriate forum for reviewing the ineffective assistance claim in its entirety") (internal

quotation marks omitted)).  Although not articulated by the Second Department, the reason for this result seems obvious enough – if no court could consider the totality of claimed counsel error, there would be no remedy for a series of attorney actions or omissions, each of which, even if objectively unreasonable, did not cause sufficient prejudice to warrant relief from the conviction, but which cumulatively cause such prejudice.

The initial question is whether this Court should consider the ineffective assistance of trial counsel claim, as disposed of in the §440 motion, or the ineffective assistance of appellate counsel claim, as disposed of in the *coram nobis* motion.  The matter is complicated because the §440 court, as one of the three grounds for its holding, expressly deferred to the Appellate Division's rejection of the *coram nobis* motion.  It is further complicated because of one of the §440 court's other grounds for its holding, that "to the extent" petitioner's ineffective assistance of trial counsel claim was based on on-the-record omissions, it was procedurally barred.

As to this latter point, I reject the §440 court's holding of an undifferentiated procedural bar for two reasons.  First, because the §440 court did not differentiate between which grounds were on-the-record and which were off-the-record, and then went on to reject the entire ineffective assistance claim on the merits, its holding in this regard is not distinguishable from the "either/or" language, i.e., that a petitioner's claims are "either unpreserved or without merit," which the Second Circuit instructed, in Jimenez v. Walker, 458 F.3d 130 (2d Cir. 2006) (extending the presumption that "the state court decided the case the way it did because it believed that federal law required it to do so" to the determination under 28 U.S.C. § 2254(d) of whether a state-court adjudication is 'on the merits') (quoting Michigan v. Long, 463 U.S. 1040-41, 103 S. Ct. 3469, 3476 (1983)), should be construed as a determination of merits and given AEDPA deference.  Second, if the §440 court's "to the extent" language meant that it would not

review the totality of petitioner's ineffective assistance claim, that would be an exorbitant use of a procedural bar, as it would deprive petitioner of his right, under the state court cases cited above, to have both his on-the-record and off-the-record ineffective assistance claims determined in one proceeding. See Contant v. Sobol, ——— F. Supp. 2d ———, 2013 WL 6425006, *23-25 (S.D.N.Y. 2013) (finding state procedural bar inadequate in a "mixed" ineffective assistance claim). There would be no forum under which the cumulative effect of error could be reviewed.

For the same reason, the §440 court's deferral to the Appellate Division does not constitute an independent and adequate state law ground for rejecting the claim. The Appellate Division could not, in the context of a *coram nobis* motion, determine whether that portion of petitioner's ineffective assistance of trial counsel claim that relied upon off-the-record trial counsel error constituted grounds for relief. The only issue before the Appellate Division on *coram nobis* is whether appellate counsel should have made other points on direct appeal. Since the direct appeal is confined to the trial record, the Appellate Division could not fault appellate counsel for failing to raise off-the-record points. Thus, the proper decision for review on federal habeas corpus is that of the §440 court, as it is the only court that had the complete ineffective assistance of trial counsel claim before it.

The question then becomes as to the standard of review that applies in this habeas corpus proceeding. Generally, when a state court decides that a claim is procedurally barred or, alternatively, without merit, and the procedural bar fails, the federal standard is deferential review under AEDPA as described above. See Jimenez, 458 F.3d at 146; see also Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006). But that ruling is unwarranted here, as it appears that the §440 court's merits holding was not truly alternative. Rather, the §440 court appears to have accepted the District Attorney's argument that it should exclude from its consideration of the

merits those parts of petitioner's ineffective assistance claim that could have been raised on direct appeal. Under these circumstances, the proper standard of review is de novo, because petitioner has done all that state law allows him to do to exhaust his ineffective assistance claim, and yet no state court has considered that claim in its totality. There is thus no state court decision to which AEDPA deference can be accorded.

As shown below, although the ineffective assistance of trial counsel claim must be reviewed in its entirety, this is not a case where the sum of the parts is greater than the whole. None of petitioner's individual points of error, in fact, reflect objectively unreasonable conduct on the part of trial counsel, and thus even de novo review does not result in a viable claim under Strickland.

A. *Failure to investigate potential witnesses and introduce exculpatory evidence*

Petitioner stated in an affidavit in his §440 motion that he "asked [sic] my trial attorney that he should contact [three named individuals] so that they could testify on my behalf," but his attorney "declined to investigate my claims, nor did he make the slightest attempt to produce" these three witnesses. In response, apparently at the behest of the District Attorney, his trial attorney put in an affidavit saying he had discussed these witnesses at length with petitioner; that petitioner had given the attorney phone numbers at which to contact these witnesses; that the phone numbers were all disconnected; that he had retained an investigator to track these witnesses down; and that the investigator had been unable to locate these witnesses, let alone confirm that they had exculpatory evidence. In his reply affidavit, petitioner averred that he had not only given his counsel the telephone numbers, but the addresses of the three purported witnesses. He pointed out that his trial counsel's affidavit did not disclose whether the investigator had checked those addresses.

Petitioner offered no proof as to what these witnesses would have testified. His moving affidavit merely made a conclusory assertion that he told his attorney to contact them "so that they could testify in my behalf." His brief made similarly conclusory albeit slightly more focused assertions that they would have testified "as to his lack of participation in the crime . . . ."

There is no constitutional violation in the §440 court's rejection of this point. Petitioner had to concede that the statement in his §440 moving affidavit that his attorney "did [not] make the slightest attempt to produce" these witnesses was wrong. Petitioner gave no specifics about what these witnesses would say, and his attorney retained an investigator to try to find them; he did not abandon petitioner or ignore the lead that petitioner had given him. Under these circumstances, counsel was not objectively unreasonable under Strickland.

B. *Failure to object to submission of first degree manslaughter charge as lesser included offense to second degree murder*

Petitioner had three points as to why his attorney should have objected when the trial court determined to submit the lesser included offense of first degree manslaughter. First, according to petitioner, the claim was time-barred. Second, had it not been submitted, petitioner contended that the jury would have acquitted him of the murder charge, rather than convicting him of the manslaughter charge. Third, he argued that submission of the manslaughter charge violated the extradition treaty between the United States and the Dominican Republic because petitioner had only been extradited for murder, not manslaughter.

His trial counsel responded in his affidavit that irrespective of any statute of limitations defense to the manslaughter charge, he wanted that count submitted, as he viewed it as the most likely means to avoid conviction on the murder charge. The District Attorney argued that the

statute of limitations had not expired because it was tolled for virtually all of the time during which petitioner had fled the jurisdiction and resided in Pennsylvania and the Dominican Republic.

Petitioner's disagreement with his trial counsel's strategy is not a ground for habeas corpus relief. Even an attorney's strategy of admitting to facts that constitute a lesser included defense is not constitutionally ineffective assistance of counsel. See Farrington v. Senkowski, 214 F.3d 237, 244 (2d Cir. 2000) (explaining that counsel's concession of defendant's guilt on a lesser charge to induce the jury to acquit on more serious charges was an acceptable tactical decision and not ineffective assistance under Strickland ); Wilson v. Heath, No. 10-CV-3814, 2013 WL 5530673, *8 (E.D.N.Y. Sept. 30, 2013) ("counsel's decision to request a lesser included offense to permit the jury to acquit petitioner of murder is entitled to deference as a strategic decision, as it may render favorable results to Petitioner"); Nunez v. Miller, No. 00–CV–0966 (ERK), 2001 WL 1773731, at *7 (E.D.N.Y. July 12, 2001) (finding it acceptable under Strickland for counsel to concede defendant's guilt to a lesser offense as a strategy to get the jury to acquit defendant on the more serious charges).

It is of course easy enough for petitioner, with the benefit of a hindsight that includes acquittal on the murder charge, to assert that the jury would have acquitted him of murder anyway even without the manslaughter charge. That seems dubious as the manslaughter conviction shows that the jury was not buying his and Placencia's testimony, and it is purely speculative as to whether that would have resulted in acquittal instead of conviction for murder in the absence of the manslaughter charge. As Judge Chin observed in Brown v. Rick, No. 01 Civ. 4310, 2003 WL 22801397, *6 (S.D.N.Y. Nov. 25, 2003), in rejecting the same ineffective assistance claim as petitioner raises here, "due to the all-or-nothing nature of proceeding without

a lesser included offense instruction, petitioners often challenge the effectiveness of their counsel on the grounds that they *failed* to request such an instruction." (Emphasis in original). Counsel's strategic decision does not warrant habeas corpus relief.

As to petitioner's claim that his counsel should have objected to the submission of the manslaughter charge pursuant to the extradition treaty between the Dominican Republic and the U.S. prohibits his trial on other charges, there is a two-pronged answer.

First, as noted above, petitioner's trial counsel averred that he wanted the manslaughter charge submitted to the jury, and indeed, while we will never know, that strategy may well have avoided petitioner's conviction for murder. His strategic determination not to insist on terms of the treaty was a strategic decision that does not violate Strickland. See Farrington, 214 F.3d at 244; Wilson, at *8; Nunez, at *7.

Second, the extradition treaty between the United States and the Dominican Republic, 36 Stat. 2468, at Article II(1), expressly defines murder as including first degree manslaughter: "Murder, comprehending the crimes designated by the terms of patricide, assassination, manslaughter, when voluntary, poisoning or infanticide." Thus, when petitioner was extradited for the crime of murder, that already included the crime of manslaughter. The extradition warrant no more had to say "manslaughter" instead of "murder" than it had to say "first degree murder" as opposed to "second degree murder." See Fiocconi v. Attorney General, 462 F.2d 475, 481 (2d Cir. 1972) (charges added after extradition "of the same character" as the charge upon which extradition occurred did not violate the treaty); United States v. Paroutian, 299 F.2d 486, 490-91 (2d Cir. 1962) (no treaty violation where defendant extradited to the Southern District to New York for "narcotics trafficking" and then additionally indicted in the Eastern District of New York for "receipt and concealment of heroin," because "the test whether trial is

for a 'separate offense' should be not some technical refinement of local law, but whether the extraditing country would consider the offense actually tried 'separate.'").

Because petitioner suffered no prejudice from his counsel's failure to raise this point, he has not met the requirements for a <u>Strickland</u> claim.

C. *Misuse of Placencia's Testimony*

Petitioner's objection on this point before the §440 court was obscure. It appears to assert that defense counsel should have objected to some, unspecified portion of Placencia's cross-examination, perhaps having to do with the fact that Placencia pled guilty, and that he further should have requested an instruction to the jury that it could not hold Placencia's guilt, and particularly his guilty plea, against petitioner.

Under any standard of review, this claim would fail. There was nothing wrong with the cross-examination of Placencia; certainly nothing to which objection could reasonably have been taken. And given the defense in this case, an instruction to the jury not to consider Placencia's guilt against petitioner would have been a non-sequitur because the whole point of putting Placencia's guilt before the jury, which of course was the reason that defense counsel called him, was that, if believed, it would exonerate petitioner. The jury was either going to believe Placencia's and petitioner's story or not; an instruction along the lines that petitioner suggested in his §440 motion would have served no purpose.

D. *Coercive jury remark*

On the Thursday before the Friday on which the jurors reached a verdict, the trial court advised them that although they had not tried the case on Fridays previously, they would continue their deliberations the next day, but would only sit until 2:00 p.m.: "Normally we

wouldn't work on Friday but since we are deliberating I'll bring you in tomorrow but we will

only work until 2:00." Although the transcript resumes the next day with some further

proceedings, the record then contains a gap. Reading between the lines, I conclude that what

happened was that the jury advised the trial court that it could not reach a verdict on the murder

count, but that it had reached a verdict on the manslaughter count. It further seems that the trial

court and the parties understood that this meant that the jury was ready to convict on the

manslaughter count, most likely because its continuing difficulty on the murder count, but its

resolution of the lesser included manslaughter count, compelled that conclusion (although it is

also possible that the jury expressly advised the trial court that it was ready to convict on

manslaughter). I infer that this is what occurred because, after a break in the proceedings, the

following dialogue ensued between the trial court and the prosecutor:

> THE COURT: I have given you some time. What's the People's position?

> MS. CARVAJAL: I spoke to my office and the [victim's] family and we would
> like to take a partial verdict. Just tell them we are taking the manslaughter as their
> verdict and that you are just going to disband them.

In other words, the prosecutor had asked her supervisors and Santiago's family whether they

would be satisfied with a manslaughter conviction and had determined to proceed on that basis.

The trial court then continued:

> THE COURT: What I should ask them is whether with any additional time would
> they ever be able to reach a verdict on the top count. If they say no then I agree
> that's what we will do.

> Let's bring the jury in. . . .

> THE COURT: Let the record indicate the jury is all present and seated in their
> proper seats.

> I received your note indicating that you are unable to reach a verdict on the top
> count. I guess the issue is will you ever be able to reach a verdict if I sent you
> home and you come back Monday will you be able to reach a verdict on the top

count.  If your answer is maybe if we have some more time we could then that's what I would do and you would come back Monday.  On the other hand if your answer is that we will never able to reach a verdict on the top count then I will allow you to go to the second count and I will take a verdict on the second count right now.  So I want you to go back, make that decision and let me know, but I [would] like to get out of here by 2: 30 so I want you to make your decision quickly.  The decision is will we ever come to a verdict on the top count.  If we can then you come back Monday.  If you can't then I'll accept a verdict on the second count.

Petitioner's claim is that by confirming the prior day's advice that the trial court would conclude proceedings for the week at 2:00 p.m. (although extending the time to 2:30 p.m.), the trial court pressured the jury into reaching its verdict, and that his counsel was ineffective for not objecting s opinion.

The deficiencies in petitioner's argument are extensive.  First, the most analogous Supreme Court authority is its *Allen* charge jurisprudence.  The Supreme Court has held that, because of the potential coercive effects of an *Allen* charge, such instruction should be evaluated "in its context and under all the circumstances."  Lowenfield v. Phelps, 484 U.S. 231, 237, 108 S.Ct. 546, 550 (1988).  Of course, the trial court's inquiry to the jury was not in any way an *Allen* charge.  The trial court did not urge jury to reach a verdict.  It gave the jury a choice – give up on the murder count if you can't decide it, or come back Monday if you think more deliberations would help.

More fundamentally, the only "coercion" that the trial court applied was to coerce the jury into absolving petitioner of the murder charge, which is precisely what it did.  If the jury had convicted petitioner of murder before 2:30 p.m., then at least petitioner would have a colorable, albeit still weak, claim.  But the trial court never gave that jury that option.  The trial court's remark gave the jury the choice of either reporting by 2:30 that it was still deadlocked, in which case it understood that the trial would be over, or that it wished to continue deliberating on the

murder charge the following week.  Convicting on the murder charge before 2:30 was not an option identified by the trial court – nor could the jury have understood it to be one, since the trial court's remark occurred after 2:15 p.m.  Petitioner's claim that his attorney should have objected to the remark is not only meritless, but ironic, since the remark led to his acquittal for murder.

E. *Failure to object to evidence seized in Pennsylvania*

After petitioner fled the scene of the murder, he stayed with his girlfriend's sister, one Carmen Juarbe, in Redding, Pennsylvania before fleeing to the Dominican Republic.  Local Redding police, acting at the behest of Detective Martin and other investigating New York City police detectives, went to the Juarbe's home, obtained her consent to search it, and found various identification and other documents belonging to petitioner.  The documents confirmed the identification of petitioner from the photographic evidence.  Petitioner contends that his trial counsel should have moved to suppress these documents, and once he had achieved that, then his arrest in the Dominican Republic would also have been illegal.  But petitioner never said *why* the documents should be suppressed.  Not only did the consent of the resident, Juarbe, confirm the legality of the search, but petitioner, as a mere transient, had no standing to challenge it.  See Brown v. United States, 411 U.S. 223, 229, 93 S. Ct. 1565, 1569 (1973).  His counsel did not have to engage in an exercise in futility.  See United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995); Purnell v. Smith, No. 85 Civ. 3998, 1988 WL 3388, at *2 (S.D.N.Y. Jan. 6, 1988).

F. *Failure to object to Vienna Convention violations*

Petitioner claims that his attorney should have objected to his arrest because he was not advised of his right to contact the Dominican Consulate, a right secured to him by Article 36 of the Vienna Convention on Consular Relations of 1963.  See Geneva Convention on Consular

Relations and Optional Protocol on Disputes, art. 36, Apr. 24, 1963, 21 U.S.T. 77. But "a defense attorney cannot be labeled ineffective for failing to advise his client of the right to speak to a diplomatic official who could do no more to protect his rights than counsel himself." United States v. Arango, 99 CV 3726, 1999 WL 1495422, at *3 (E.D.N.Y. Dec. 29, 1999). Moreover, "a violation of Article 36 . . . is not a basis for the dismissal of an indictment." United States v. De La Pava, 268 F.3d 157, 163 (2d Cir. 2001). Petitioner failed to make any showing to the §440 court how such advice would have helped him.

## CONCLUSION

The petition for a writ of habeas corpus is denied, and the case is dismissed. A certificate of appealability shall not issue. See 28 U.S.C. § 2253(c). Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444, 82 S. Ct. 917, 920 (1962).

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
     March 25, 2014